WILLIAM STIRLING and ADOLPH AHRENS, Garnishees of N. W. LAWSON vs. GRENVILLE LOUD, and others, trading as LOUD, CLARIDGE & Co.

*Responsibility of the Master of a Vessel for necessary Supplies—Interest of the Owners of a Vessel in the Freight.*

Supplies were furnished for a schooner which was hired under a contract with the owners, known as a "lay," the terms of which were that the master should victual and man the vessel, and after all port charges were deducted, he should receive one-half of the freights. The existence of the contract was known to the parties who furnished the supplies for the vessel. The account for the supplies was kept against the schooner and owners. An attachment was issued by the parties who furnished the supplies, against the master of the vessel, a non-resident, and laid in the hands of persons who had chartered the vessel from the master in his own name. At the time of laying the attachment there was a net balance in the hands of the garnishees for freight due on the charter-party, more than the claim for supplies; and at the same date the master was indebted to the owners of the vessel on account of freights earned under the contract with them, to an amount greater than that due by the garnishees on the charter-party. Before the laying of the attachment, the owners of the vessel notified the garnishees not to pay the master any more of the freight then due. HELD:

1st. That the master, and not the owners, was responsible for the supplies furnished to the vessel, notwithstanding the bill for them was made out against the vessel and her owners.

2d. That the balance of the freight in the hands of the garnishees, due on the charter-party, was not the rightful property of the master, and therefore not subject to the attachment.

APPEAL from the Court of Common Pleas.

The cause was argued before BARTOL, C. J., BRENT, MAULSBY, MILLER and ALVEY, J.

*Arthur George Brown* and *George Wm. Brown,* for the appellants.

A contract of "lay" is a continuing contract, and from the nature of the case necessarily must be so, lasting while the

captain remains in command, and each voyage is not and cannot be considered a separate and distinct undertaking. The contract of lay in this case is proved to be a continuing contract, beginning in August, 1867, with the fitting out of the schooner, and continuing until Lawson's discharge. *Thomas, et al. vs. Osborn,* 19 *Howard,* 22.

Lawson's interest in the earnings of the vessel was simply his "wages."

The charter-party in this case, though signed by Lawson in his own name, was the contract of his principals. *Higdon vs. Thomas,* 1 *H. & G.,* 139; *Oelrichs & Lurman vs. Ford,* 21 *Md.,* 489.

The plaintiffs have no other or better right than Captain Lawson would have if the suit had been brought by him against the garnishees. The appellees might have refused to sell provisions on the captain's credit, and if they had sold on the credit of the ship and owners, the admiralty law would have given them a lien which could be enforced by libel, instead of this attachment. *Thomas, et al. vs. Osborn,* 19 *How.,* 22–29, 30; *The Grapeshot,* 9 *Wallace,* 129. But after neglecting to avail themselves of the means necessary to entitle them to this easy remedy, devised for the protection of just such cases; after voluntarily giving personal credit to the captain, they cannot now hold the ship and owners liable for his debt. *Story on Agency,* secs. 269–288, 289; *Patterson vs. Gandasequi,* 15 *East,* 62; *Patapsco Ins. Co. vs. Smith,* 6 *H. & J.,* 166–171.

The instruction given by the Court was erroneous. The account of Stirling & Ahrens is not a personal account with Captain Lawson, but is with the Schooner L. C. Hickman and owners. If on that account Captain Lawson had brought suit against Stirling & Ahrens for the balance in their hands, it would have been competent for them to show that they had received notice from the owners not to pay to him, and that, in fact, the balance was due to them. So the owners could have recovered the balance from Stirling & Ahrens

in an action for money had and received, brought against them.

In no form of action can Captain Lawson or his creditors recover from Stirling & Ahrens anything that he was not entitled to, as his wages, under the contract of lay.

*Joseph B. Seth* and *William S. Waters,* for the appellees.

The Court below was right in granting the plaintiff's prayer.

Lawson holding and using the vessel, under the contract in question, was owner, *pro hac vice,* and responsible for such debts as those upon which this suit was brought. *Webb vs. Pierce,* 1 *Curtis,* 104; *Thomas, et al. vs. Osborn,* 19 *Howard,* 30–38; *Kenzel vs. Kirk,* 37 *Barb.,* 113; *Hallet vs. Col. Ins. Co.,* 8 *Johns.,* 272; *Manter vs. Holmes,* 10 *Met.,* 402; *Taggard vs. Loring,* 16 *Mass.,* 336; 3 *Kent's Com.,* 137 *to* 139.

By virtue of the contract under which Lawson held the vessel, the freight was primarily due to him. The claim of the owners against him for the hire of the vessel was an ordinary indebtedness, the owners holding no better position than other creditors of Lawson. They had no lien upon the money attached in this case which they can interpose against the attachment.

ALVEY, J., delivered the opinion of the Court.

This is an attachment on warrant against Lawson, the defendant, as a non-resident, and the claim of the appellees is for supplies furnished for the schooner " L. C. Hickman," while the defendant was master thereof, and sailing her under a contract with the owners, known as a "lay." The terms of the contract were, that the defendant as master should victual and man the vessel, and after all port charges were deducted, to get half the freights. These are the usual and customary terms of such contracts. The existence of the contract was known to the appellees at the time of the sup-

plies furnished, but the account was kept against the schooner and owners.

The case was tried in the Court below on the pleas of *non-assumpsit* and *nulla bona*. It was shown that there was a net balance in the hands of the appellants, at the time of laying the attachment, of $1,898.12, for freight due on charter-party, entered into with Lawson in his own name. The freight was reserved by the charter-party to Lawson for a voyage from Baltimore to Humacao, and back. It was also shown in evidence that, at the time of laying the attachment, Lawson, the defendant, was indebted to the owners of the vessel, on account of freights earned, under the contract with them, an amount greater than that due by the appellants on the charter-party. And it was also in proof that, before the laying of the attachment, the owners, by their duly authorized agent, notified the appellants not to pay the defendant, Lawson, any more of the freight then due, and they agreed that they would not. The defendant was discharged as master of the vessel on the morning of the 17th of March, 1869, and the attachment was laid in the evening of the same day.

The Court below, at the instance of the appellees, instructed the jury, that if they found the existence of the contract between the owners of the vessel and the defendant; the indebtedness of the defendant to the appellees; the non-residence of the defendant; the making of the charter-party given in evidence, and that, at the time of issuing the attachment, there was in the hands of the appellants the sum of $1,898.12, due for freight under the charter-party, " *then the verdict must be for the plaintiffs* upon both issues." And whether this instruction be correct or not depends upon the real nature of the contract under which the vessel was let to the master, and the rights of the respective parties thereto.

Contracts of the character of the one in question have become quite familiar and of frequent use among those engaged in the coasting trade of this country. They have, in several cases, been the subject of judicial decision, and their

nature and qualities have been determined, and the rights and liabilities under them become, to a great extent, fixed and well understood. And as the contract in this case is of the customary nature, without any special provisions in it to distinguish it from others of its class, its attributes may be stated to be, that, under it and during its existence, the general owners were required to keep the vessel in repair, but the master had the entire possession, command and navigation of it, with a right to employ her in such freighting voyages as he should think proper; thus becoming owner of the vessel, *pro hac vice,* and not a mere agent of the general owners as ordinary masters are. He was to victual and man the vessel at his own expense, and from the gross earnings were to be deducted all port charges, and the residue then to be divided into two equal parts, one of which was to belong to the owners, and the other to the master. This agreement, being indefinite as to its duration, could be terminated by the restoration of the vessel to the owners by the master, or by their intervention to displace him, at the end of any voyage, but not while conducting a voyage. This is the exposition of the contract as given by the Supreme Court of the United States, in the case of *Thomas vs. Osborn,* 19 *How.,* 22, and it seems to accord with that given in other cases on the subject. *Webb vs. Peirce,* 1 *Curtis,* 104; 3 *Kent's Com.,* 138.

Seeing, then, that the master, when he hires a vessel on shares, as was done in this instance, is under an obligation to victual and man her, and becomes the owner, *pro hac vice,* during the existence of the contract, it would seem necessarily to follow, that he, and not the general owners, is responsible for the supplies furnished to the vessel; and that notwithstanding the bill for the supplies was made out against the vessel and her owners. *Story on Agency, section* 297. It follows, therefore, that if the freight in the hands of the appellants, or any portion thereof, be the rightful credit of the master, it should be condemned for the satisfaction of the claim of the appellees.

But was the balance of the freight in the hands of the appellants, due on the charter-party, under all the circumstances of this case, the rightful credit or property of the master, and therefore subject to the attachment. We are clearly of opinion that it was not.

It is said in 1 *Parson's Mar. Law*, 236, that "when the earnings of a vessel let on shares are collected, they are equally the money of the owner and master, *and the latter becomes a trustee of the owner's share.* And if a third person, knowing all the facts, is authorized by the master to receive the freight already earned, and promises to pay the owner his share, afterwards receives the money, he holds it for the use of the owner, and the latter may sue him for it." This last proposition was so decided in the case of *Williams vs. Williams*, 23 *Maine*, 17, and we think the principle of that case fully embraces this. It may, indeed, be conceded, that, as a general proposition, the master, sailing the vessel on shares, is alone entitled to collect the freights earned, and, if it be necessary, to sue for their recovery. But it does not follow, because such right exists exclusively in the master, that the owners may not interpose for their protection. They have, at least, an equitable right to the money attached, and if it were paid over to the defendant he could hold it in no other character than as trustee. It is not money liable for his debts, and the owners having made known their claim to the appellants, the latter were justified in resisting the attempt to apply the money, that in equity and conscience belongs to the owners, to the payment of the proper individual debt of the master, the defendant. A Court of Equity would certainly restrain such application of it, and we can perceive no propriety in allowing it to be condemned to such purpose.

It was contended in argument that the freight earned by each voyage of the vessel was a separate and distinct affair, and gave rise to separate and distinct rights of account, and that, consequently, the balances due the owners for and in respect of freight on former voyages, should not be allowed

to off-set the master's right to his full half of the net earnings of the last voyage. But to this proposition we do not agree. The master's accountability to the general owners is co-extensive with the existence of the contract, and there is nothing in the contract itself looking to any such division of accounts, whatever may be the practice in such cases, as matter of convenience to the parties.

As the instruction given by the Court required the verdict to be found for the appellees, without reference to the evidence tending to establish the fact that the defendant in the attachment had no actual beneficial right to or interest in the freights in the hands of the appellants, and that they had been notified to hold them to the use of the general owners, to whom they in equity and right belonged, it follows that such instruction was erroneous, and should not have been granted. And as to the prayer of the appellants, which was rejected by the Court, we forbear to express any opinion in regard to it, as we suppose the whole case to be embraced in what has been said upon the instruction that was actually given.

*Judgment reversed and*
*new trial awarded.*

(Decided 12th January, 1871.)